## KIAH B. SEWALL & al. vs. JOHN WILKINS.

The question, whether the acts, to be performed by the parties respectively in a covenant or agreement, are to be regarded as mutual, dependant or concurrent, or otherwise, is to be determined by their intention, apparent from the written evidence of what has been agreed, in connection with the subject matter to which it is to be applied.

Where one party gives to the other his promissory notes, payable in one, two, and three years, with interest annually, at a place distant from the domicil of either party; and the other stipulates, that upon payment of the notes according to the tenor thereof, and upon reasonable demand, to convey certain lands by a good and sufficient deed; actual payment of the notes, or an unconditional tender of payment, is a condition precedent to the conveyance.

When an act is to be performed *upon reasonable demand*, the party, on whom the demand is made, is entitled to such time as is necessary to prepare himself to perform the act.

And as it was necessary for the party, on whom such demand was made, to travel to a place two hundred miles distant, in the months of *March* and *April*, to transact business with persons there, and to procure and to make papers, before the act could be performed; *it was held,* that he was entitled to a longer time than ten days.

THE action was on a bond from the defendant to the plaintiffs, dated *April* 7, 1835. The condition of the bond recited, that *Wilkins* had agreed to sell and convey to the plaintiffs, one undivided eighth part of a tract of land described, and the same conveyed to him that day by *Hazen Mitchell;* and that the plaintiffs had on the same day given to the defendant their three several promissory notes, each for the sum of $1533,00, with interest annually, one payable *April* 7, 1836, another *April* 7, 1837, and the third *April* 7, 1838; and concluded in these words: "Now if the said *John Wilkins,* upon the payment of said notes according to the tenor thereof, by the said *Sewall* and *Thomas,* shall, upon the reasonable demand of said *Sewall* and *Thomas,* convey to them, or their assigns, the land above described, by a good and sufficient deed, then this bond to be void, otherwise the same shall remain in full force." The notes were on their face made payable at the *Suffolk* Bank, in *Boston,* although not thus described in the bond. The present action was commenced *April* 8, 1836. The plaintiffs offered in evidence a letter from the defendant to *Thomas,* one of the plaintiffs, dated *March* 13, 1836, in reply to a letter from

*Thomas*, in which the defendant says : " I am prepared at any time, when you comply with the conditions of my bond to you, to comply on my part, and give you a ' good and sufficient deed,' according to the terms of the bond.    But it should be done as early as the first day of *April*, because the notes being payable in *Boston*, I must have time before they are due to send them up.    I presume you intend to come or send here to make the payments and take the deed."    The plaintiffs proved, that on *March* 29, 1836, they had in a room in *Bangor*, in which the defendant and one of the plaintiffs were, a trunk containing specie to an amount sufficient to pay all the notes, and offered to perform the conditions of the bond on their part, and demanded of the defendant " a good and sufficient deed of the premises described in the bond according to the conditions thereof."    *Wilkins* offered to make, execute, and deliver a deed of warranty of the land, and the plaintiffs declined to receive such deed, stating that the title was in the Commonwealth of *Massachusetts*.    *Wilkins* offered, if they would let him have the money and pay the notes, that he would immediately obtain an unincumbered title, and in the mean time offered the most ample security to return the money, if a perfect title was not given.    The money was immediately carried back to *Portland*.    The plaintiffs also proved, that the land-agent of *Massachusetts* had contracted to convey the land in question to Messrs. *W. T. & H. Pierce*, but that the title remained in the Commonwealth until after the commencement of this suit.    The witness introduced by the plaintiffs to prove the execution of the bond, proved also, that *Hazen Mitchell* had a deed of the land described in the bond from the Messrs. *Pierce*, and that the notes he had given for the land to the *Pierces*, were transferred to *Wilkins ;* that *Mitchell* made the bargain with the plaintiffs ; that they were informed of the state of the title before the bond was given ; that *Mitchell* gave a deed to *Wilkins*, and *Wilkins* a bond to the plaintiffs by mutual arrangement, and that *Mitchell* was to have all above paying the *Pierce* notes.    There was much evidence in relation to the value of the land on *March* 29, 1836.    The defendant proved, that he obtained a perfect title to the land, and tendered a warranty deed thereof to one of the defendants, *August* 30, 1836, on receiving payment of the notes ; to which that plaintiff replied, that he had not then the money, but

would see the other plaintiff and obtain his views on the subject. The defendant also proved, that the notes mentioned in the bond were at the *Suffolk Bank* when they fell due, and that nothing had been paid on them. The defendant also offered evidence tending to show, that the offer by the plaintiffs to pay the money at *Bangor* was not made in good faith, but that the money was obtained on the special condition, that it should be brought immediately back to *Portland,* and was so brought and carried immediately back.

*Emery J.,* before whom was the trial, instructed the jury, that it was not pretended on the part of the plaintiffs, that strict performance had been made, *as to the payment of the notes,* which were payable at the *Suffolk Bank* in *Boston,* but they shewed by evidence, that by consent of defendant, they were exonerated as they contend, from the strict performance, by waiver of the place of payment; that the bond required no proof of consideration, it speaks by its own power, and binds the defendant; that in suits on deeds, on covenant against incumbrances, nominal damages, only, are to be given, unless the incumbrances have been removed by the plaintiff; that before the case of *Porter* v. *Noyes,* a bond for a deed was satisfied by giving a deed of general warranty. Since that case, a question has arisen, whether a different construction should not be made. That was an action of assumpsit. But to ascertain the damages in the case, the Judge instructed the jury, that as *Wilkins* had not a perfectly clear and unincumbered title, neither at the execution of the bond, nor at the time of the offer to pay, they would consider that the offer to convey by deed of general warranty, was not a compliance with the obligation; that the conditions in this bond were *not dependent conditions.* The plaintiffs were bound to do every thing on their part first to be done, to entitle themselves to the right of requiring a deed. *Some* of the payments were to be made before *others ;* the time assigned in the bond, for giving the deed, was long after the time set for the payment of the *first note.*

That where a contract of this description is rescinded, the party seeking redress is entitled to recover the whole amount paid by him, and in looking into the title, if there be no fault on his part, and there be fault on the part of the defendant.

Sewall *v.* Wilkins.

The plaintiffs here claim the value of the land, evidence has been properly given of it, and of its prospective value. In some cases, on a breach of the condition, the value of the land would be the measure of damages. Although there is now no sale for such land, yet it is matter of consolation, that on whose hands soever it shall fall, it has not lost its value since the bargain.

That they should look carefully into the evidence as to the time of payment, to decide which party was in fault. And as to the damages, the jury were invested with the power of a court of chancery, to do, between the parties, what is agreeable to equity and good conscience, under all the circumstances of the case in evidence before them.

That generally speaking, when a man professes to *have money* to pay, he is supposed to intend paying it as he says, and inquiry is not made where he got his money. But if the plaintiffs, as is said here, did not act in good faith, and whether they did, the jury would judge, and of their intention to pay from the evidence, and whether *Wilkins* would gladly have received the money and given ample security to free the title, and offered to do so.

If they were satisfied that *Wilkins* did not intend to vary the contract on any other principle than that the money should be paid down, the jury were instructed that it had been ruled in equity, that treaty and negotiations for the variation of the terms of a contract, will not amount to a waiver, unless the circumstances show that there was an intention of the parties that there should be an absolute abandonment and dissolution of the contract. They would inquire, whether there was an absolute abandonment of the contract, in this case; if they were satisfied from the evidence, that the waiver of the place of payment was made only on the condition of payment, and *that* payment was *fraudulently* omitted, and was really never intended honestly to be made, *that waiver is waived.* And the plaintiffs should keep ready to pay when and where the payment should be properly demanded. That a tender at a different place than that appointed in the contract, if the money be received and accepted, is a discharge. This tender, not being refused, it was necessary for the plaintiffs, at the time the notes should be payable at the *Suffolk* Bank, to be ready there with the

money to pay. The plaintiffs were bound to pay that note at all events.

That if, from the evidence, they believed that *Sewall & Thomas* did know this want of title, and had consulted *Pierce* about it before they took the defendant's bond, and that the defendant did not know it, the time within which the defendant obtained the clear title and tendered his deed to the plaintiffs, was within reasonable time, considering that the title was to be obtained from the government of another State.

That the contract of the government to convey to *Pierce*, constituted a moral certainty that the land would be conveyed on payment of a certain sum, agreeably to the stipulation, and vested such an interest in *Pierce*, that it might be *attached*, and the right then still subsisting in the Commonwealth, was an *incumbrance*. And if the plaintiffs made out their right to sustain their action, nominal damages only could be given, as the plaintiffs had paid nothing to remove the incumbrance.

That if from the evidence, they were satisfied that the plaintiffs did not pay or tender the money on the note at the *Suffolk* Bank, when payable, if they were satisfied it was there demanded, the defendant had not broken the condition of the bond, and the action is prematurely brought.

If these instructions were erroneous, the verdict, which was for the defendant, was to be set aside and a new trial granted, provided the Court should be satisfied that the action was maintainable, otherwise the verdict is to stand.

The case was very fully argued on all the points raised in the report of the Judge, by *Mellen* and *Deblois*, in writing, for the plaintiffs, and by *Preble*, in a printed argument, and by *W. P. Fessenden*, in a written one, for the defendants.

For the plaintiffs, the counsel endeavored to maintain these propositions.

1. That the subsequent agreement of the parties, that the contract on both sides should be completed at the time and place appointed, was a legal waiver of objection, on account of a non-compliance with the terms of the contract, as expressed in the notes. The authorities are decisive on this point.

2. That the agreement referred to, being in writing, the construction of the contract is to be given by the *Court,* and not by the *Jury.*

3. That it is not to be explained by parol, but the intentions of the parties are to be gathered from the *contract itself.*

4. That the obligor in a bond is bound to perform its conditions, if lawful, though he has received no consideration for entering into the bond, or pay damage for the breach of the conditions.

5. That when the condition of a bond is to convey the legal title to a tract of land, and the breach of condition was occasioned by his want of title or seisin, that in such case the obligee is by law entitled to recover damages equal to the value of the land at the time of the breach.

6. In the case of mutual, dependant covenants or conditions, neither party is bound to perform, unless the other is also ready and able to perform his part; hence a tender is not necessary by either, but only a readiness and offer to perform his part of the contract, provided the other party will do the same.

7. That every man is presumed to act honestly, and to indicate his intentions by his conduct.

8. That in doing an act which he has a legal right to do, he cannot act fraudulently, and therefore fraudulent intentions cannot, in a court of justice, be imputed to him.

9. Neither have a jury in such case any authority to examine his motives, and much less to impeach them.

10. That as the defendant could not convey the title, when it was duly demanded of him, his offer to furnish ample security that the title should be acquired from *Massachusetts,* and conveyed to the plaintiffs, was no defence, nor a subject of consideration by the jury.

11. That it was competent for the defendant to waive his claim on the plaintiffs of a strict compliance of *some parts of the contract,* as expressed in the bond and notes, without an absolute abandonment and dissolution of it.

12. That the right remaining in the Commonwealth after the contract of sale made with the *Pierces,* so far from being in the nature of an incumbrance on the title or right of the *Pierces,* was the legal title itself, then belonging to the Commonwealth.

They contended, that the instructions given by the Judge to the jury were erroneous in many essential particulars, and cited the following authorities. 3 *Fairf.* 441; 12 *Mass. R.* 277; 4 *Kent*, 124; 2 *Bl. Com.* 154; *Roll. Ab.* 414; 1 *Bac. Ab.* 465; *Com. Dig. Cond. B.* 1; 15 *Mass. R.* 500; 1 *Saund.* 320, note 4; 5 *Pick.* 395; 2 *Pick.* 292; *ibid*, 155; 4 *T. R.* 761; 2 *Burr*, 899; 11 *Pick.* 151; 11 *Johns. R.* 525; 7 *T. R.* 125; 2 *Greenl.* 22; 10 *Johns. R.* 265; 8 *T. R.* 366; 17 *Johns. R.* 293; 2 *Johns. R.* 207; *Sug. Vend. and Pur.* 161; 13 *Pick.* 281; 10 *Mass. R.* 84; 2 *Cowper*, 684; 16 *Mass. R.* 161; 4 *Pick.* 179; 2 *B. & P.* 447; 1 *East*, 203; 2 *Caines' R.* 200; 2 *East*, 211; 6 *Wheat.* 109; 6 *Cowen*, 297; 2 *Conn.* 485; 2 *Greenl.* 266; 9 *Cowen*, 46; 6 *Cowen*, 13; 12 *Johns. R.* 190; 1 *Caines'*, 47; 12 *Johns. R.* 525; *Stark on Ev.* 1503; 12 *Mass. R.* 304; 4 *Mass. R.* 627; 1 *Fairf.* 113.

*W. P. Fessenden*, for the defendant, contended:

1. The negotiations between the parties resulted in a conditional agreement only to have the payment made at *Bangor*, and the condition was never complied with by the plaintiffs. That such negotiations amount to a waiver of the express stipulations in the contract, would seem too plain to require authorities. But the charge of the Judge on this point, is fully sustained by them. *Robinson* v. *Page*, 3 *Russell*, 114; *Price* v. *Dyer*, 17 *Vesey*, 863.

2. The demand was not made "a reasonable time" before the bringing of the suit, as provided in the bond. All the facts in relation to the title were known to the plaintiffs, when the bond was made and the notes given. The suit was brought within ten days of the time when the demand was made, and a reasonable time for performance by the defendant had not then elapsed. *Atwood* v. *Clark*, 2 *Greenl.* 251; *Jackson* v. *Saunders*, 2 *Dow*, 444; *Ellis* v. *Paige*, 1 *Pick.* 43; *Brinley* v. *Tibbets*, 7 *Greenl.* 72; *Greenby* v. *Cheevers*, 9 *Johns. R.* 128; *Borden* v. *Borden*, 5 *Mass. R.* 78; *Hudson* v. *Swift*, 20 *Johns. R.* 24; *Fuller* v. *Hubbard*, 6 *Cowen*, 19; *Fuller* v. *Williams*, 7 *Cowen*, 54.

3. The offer by the defendant of a deed of warranty, good and sufficient in point of form, at the time of the tender, was performance of his obligation. The contract is to convey by good and

Sewall *v.* Wilkins.

sufficient deed. 16 *Johns. R.* 297; 15 *Pick.* 552; 20 *Johns. R.* 130; 9 *Greenl.* 128.

4. The conditions on their part were to be performed by the plaintiffs, before they could have any claim upon the defendant for the performance of his covenants. 1 *Saund.* 320, and cases cited in the notes; *Gardiner* v. *Corson*, 15 *Mass. R.* 500; *Kane* v. *Hood*, 13 *Pick.* 281; *Bean* v. *Atwater*, 4 *Conn.* 3; *Greenby* v. *Cheevers*, 9 *Johns. R.* 126.

5. As to the damages, the jury have equitable powers in such cases. *Province laws*, 102; 1 *Dane*, 549; *Rev. St. of Maine, c.* 50; 12 *Mass. R.* 625; *Story Eq. ch.* 1. And the plaintiffs must prove their damages. 2 *Greenl.* 13; 6 *Greenl.* 208; 4 *Pick.* 466; 8 *Pick.* 12; *ibid*, 100. Had the conveyance been actually made, but nominal damages could have been recovered. 8 *Pick.* 547; 1 *Story's Eq.* 77. Before the trial, the defendant offered the plaintiffs a perfectly good title. 5 *Mass. R.* 75; 2 *Johns. R.* 614; 3 *Cowen*, 519; 3 *Conn.* 599.

*Preble*, on the same side, said, that the question, emphatically *the question*, as the verdict now stands, is not whether the plaintiffs' damages ought to be a larger or a smaller sum in amount; but whether upon the facts reported by the Judge the *plaintiffs have in law maintained their action*; and that he should confine himself to this single inquiry.

In his argument he remarked: It is manifest then, that in the undertaking of the plaintiffs to pay the two first notes according to their tenor together with the annually accruing interest on the third, and in the stipulation of the defendant to convey the land, the parties did not contemplate a mutually concurrent and simultaneous performance; but the reverse. This position is strengthened by the fact that the defendant undertook to convey on two conditions.
1. "Upon payment of said notes according to the tenor thereof."
2. "Upon the reasonable demand" of the plaintiffs, payment of the notes having first been made by them.

The plaintiffs would not accept *Wilkins'* deed of warranty; they would accept no security for the removal of incumbrances; they would allow no time to complete the title. Under these circumstances a reasonable time should have been allowed to *Wilkins* to go to *Boston*, do the business and return, allowing some few days

to raise the necessary funds, as *Sewall* and *Thomas* chose to with-hold their payments. Considering the distance and the season of the year, and the circumstances of the case, a fortnight would seem to be the least possible time. Yet they actually commenced their action against *Wilkins* within ten days.

We contend, that in point of fact there never was a real tender. The whole is a mere contrivance ; a device to escape from their own contract, and ensnare *Wilkins.*

The case was continued, *nisi,* and the opinion of the Court pre-pared by

WESTON C. J. — The law is well settled, that whether the acts to be performed by the parties respectively, in a covenant or agree-ment, are to be regarded as mutual, dependent, concurrent, or oth-erwise, is to be determined by their intention, apparent from the written evidence of what has been agreed, in connection with the subject matter, to which it is to be applied.

The plaintiffs gave to the defendant their negotiable promissory notes, payable at the *Suffolk* Bank, absolutely, and without any condition whatever. This was the only evidence of the agreement of the plaintiffs, received by the defendant. It sufficiently appears, that the payment of these notes, was not made by the parties to depend upon performance on the part of the defendant, concurrent-ly or otherwise ; but that this was to be done subsequently in the order of time. And this is deducible as well from the notes, as from a just construction of the condition of the bond. The con-veyance was to be made, upon payment of all the notes. These were payable in one, two and three years. Payment could not be enforced at an earlier day ; although the plaintiffs reserved to them-selves the option to pay them, at any prior period. But this stipu-lation, depending on their will, does not impair the fair inference, that it must have been understood, that payment of at least two of the notes was to precede the deed. Upon payment of the notes, the plaintiffs became entitled to a conveyance from the defendant, upon reasonable demand. They were to be paid at one place, and the domicil of the defendant, upon whom the demand was to be made, was at another, at the distance of more than two hundred miles. Without therefore adverting at this time to what is to be

Sewall *v.* Wilkins.

understood by a reasonable demand, we are satisfied, that by the original agreement, actual payment could alone impose the duty of performance on the part of the defendant.

But it is contended, that the condition of the bond has been modified by the parties, and that the force and effect of the evidence upon this point, being in writing, is to be determined by the Court, as a question of law. *Thomas,* for himself and the other plaintiff, by his letter to the defendant, of the eleventh of *March,* 1836, desires to know, whether the defendant will be prepared to give " a good and sufficient deed," by the first of *April* then next, advising him, that they should be ready to fulfil the obligation on their part, at that time. The defendant, in his reply, on the thirteenth of *March,* states, that he is prepared at any time to give " a good and sufficient deed," according to the terms of the bond, when they comply with the conditions on their part. And he requests, that they would inform him by return of mail, whether it is their wish to complete the business at his residence at *Bangor,* or whether they would prefer that the notes and deed should be sent to *Boston.* Thereupon the plaintiff, *Thomas,* rejoins, on the fifteenth of *March,* that being disappointed in some arrangements, he did not know that he should be able to do as he wished, when he last wrote, but that in the course of a few days one of them would be at *Bangor,* and attend to the business; but he thought the notes had better remain there.

We cannot extract from this correspondence any definite agreement, changing the condition of the bond. The notice, that they should be ready to pay positively by the first of *April,* was withdrawn. They had been disappointed, and they did not know that they should be able to pay. One of them would attend to the business in a few days at *Bangor.* This could not be taken as an intimation, that the defendant was then to receive payment. He was given to understand, that this was rendered improbable, by their disappointment. The defendant expressed his willingness to receive payment at *Bangor;* but he required to be informed by return of mail, whether they would complete the business there. Their answer was vague, indefinite, uncertain, but finally left the business to be arranged at an interview, which one of them proposed to have with him at *Bangor.* The parties came to no agreement in these

letters; but the defendant manifested a spirit of accommodation, little merited by the course of proceedings, which the plaintiffs then or soon after meditated.

What took place at *Bangor*, on the twenty-ninth of *March*, is detailed in the deposition of *Albert W. Paine*. The plaintiffs did not then agree to what the defendant proposed and desired. He was willing to receive the money there; but they would not pay it, except upon a condition, with which they knew he had it not in his power to comply.

He declared to them, that the deed he proffered, which was a deed of warranty, with the usual covenants, was in his judgment a compliance with what the bond required; and there is reason to believe, that the execution of such a deed was all he contemplated in his letter to the plaintiffs. The land, which the condition of the bond recites to have been, on the day of its date conveyed to him by *Hazen Mitchell*, he was to convey to the plaintiffs or their assigns. *Mitchell's* deed did not convey the land to him, the title being then in *Massachusetts;* nor would his deed, if it had been executed, have conveyed it to the plaintiffs. We do not intend therefore to intimate, that such a deed would have been a compliance with the condition of the bond; although such may have been very honestly the impression of the defendant.

As soon, therefore, as the parties understood each other, the defendant most certainly did not agree on the twenty-ninth of *March*, to receive the money and to fulfil on his part the conditions of the bond, in the sense in which they were construed by the plaintiffs; nor did he then admit, that they had made a reasonable demand on him to do so. We have seen, that the previous correspondence resulted in no agreement, to waive or change the conditions of the bond. And upon a just construction of that instrument, and of the notes therein referred to, the plaintiffs were to pay absolutely, upon which they were entitled to make a reasonable demand upon the defendant, to convey to them the land described therein, by a good and sufficient deed. This not having been done, it has not been made to appear, that they have established any right to demand performance, on the part of the defendant.

But if an offer to pay the money was equivalent to actual payment, we are of opinion, that a reasonable demand had not been

made upon the defendant, when the action was commenced. The plaintiffs knew how the title stood, and prior to the execution of the bond, had expressed themselves satisfied with it. They knew that *Massachusetts* had extended a credit to the purchasers of land for the last payment, until the fall of 1838 ; although they had the option to pay earlier. And they knew, that they were not to receive a deed from that Commonwealth, until the whole purchase money had been paid.

The defendant had a right to expect, that the plaintiffs would have availed themselves of the whole period of credit given to them. He could not have enforced payment earlier. The correspondence, taken together, withdrew the notice, that the money would be paid by the first of *April*. He was under no obligation, therefore, to be prepared to fulfil on his part, on the twenty-ninth of *March*, when the money was offered. The plaintiffs knew that he had not acquired the title, and that he would not acquire it, unless hastened by payment of the whole purchase money by them.

If he obtained and conveyed the title, as soon as might be, after he was thus hastened by actual payment by the plaintiffs, or an offer to pay, if that was equivalent, it was all that could be fairly required of him. It is a perversion of the just import of language to contend, that a demand is reasonable, which denies to the party, upon whom it is made, the time necessary to do what is required, when he is in no fault for not being prepared before. The demand, to have been reasonable, considering the subject matter, and the known state of the title, should have allowed to the defendant a suitable time to do that which he had stipulated to do only upon reasonable demand. The plaintiffs neither gave nor proposed any time for this purpose ; but within ten days brought their action.

Without finding it necessary to determine what would have been a reasonable time, we are very clear, having regard to the distance from *Bangor* to the office of the Land Agent of *Massachusetts*, the nature of the business to be accomplished, and the fact that other persons were interested in distinct portions of the purchase, that the defendant was entitled to a longer period than ten days ; more especially, when he and others concerned, from the term of credit given, had previously every reason to believe, that the necessary conveyances would be delayed for years.

*Judgment on the verdict.*